Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 S.W. Birch Street, Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff JENNIFER CARBINE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CARBINE, an individual,<br><br>           Plaintiff,<br><br>v.<br><br><br>MM ENTERPRISES USA, LLC, a Delaware limited liability company; and DOES 2-10, inclusive<br><br>           Defendant. | **Case  No**. 2:20-CV-04762-RGK-AFM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* **[MEDMEN.COM]**<br><br>2. **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* **[MEDMEN.COM]** |

Plaintiff, JENNIFER CARBINE ("Plaintiff"), alleges the following upon information and belief based upon investigation of counsel, except as to her own acts, which she alleges upon personal knowledge:

### INTRODUCTION

1.      Plaintiff is a blind person who requires screen-reading software to read

website content using her computer.  Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision.  Others have no vision.

2.     Plaintiff brings this civil rights action against Defendant MM ENTERPRISES USA, LLC, a Delaware limited liability company, ("Defendant") for its failure to design, construct, maintain, and operate its website (hereinafter the "Website" or "Defendant's Website" which shall refer to medmen.com, and any other website operated by or controlled by Defendant as well as any third party content which is located on or used in connection with medmen.com and any other website operated by or controlled by Defendant, for the purposes described herein) to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.  Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered thereby and in conjunction with its brick-and-mortar locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

3.     The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living, and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible to blind and visually-impaired individuals.

4.     Because Defendant's Website is not equally, independently, or fully accessible to blind and visually-impaired consumers in violation of the UCRA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and

1    remain accessible to blind and visually-impaired consumers.

2        5.      Plaintiff is informed and believes that each of the Defendants herein,

3 including Does 1 through 10, inclusive, is responsible in some capacity for the

4 events herein alleged, or is a necessary party for obtaining appropriate relief.

5 Plaintiff will seek leave to amend when the true names, capacities, connections, and

6 responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

7                       **JURISDICTION AND VENUE**

8        6.      This Court has subject-matter jurisdiction of this action pursuant to 28

9 U.S.C. § 1331 and 42 U.S.C. § 128188, as Plaintiff's claims arise under Title III of

10 the ADA, 42 U.S.C. § 1281, *et seq*., and 28 U.S.C. § 1332.

11        7.      This court has supplemental jurisdiction over Plaintiff's non-federal

12 claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related

13 to Plaintiff's federal ADA claims, they form part of the same case or controversy

14 under Article III of the United States Constitution.

15        8.      This Court has personal jurisdiction over Defendant because it conducts

16 and continues to conduct a substantial and significant amount of business in the State

17 of California, County of Los Angeles, and because Defendant's offending Website is

18 available across California.

19        9.      Venue is proper in the Central District of California pursuant to 28 U.S.C.

20 §1391 because Plaintiff resides in this District, Defendant is subject to personal

21 jurisdiction in this District, and a substantial portion of the conduct complained of

22 herein occurred in this District.

23                              **PARTIES**

24        10.     Plaintiff, at all times relevant and as alleged herein, is a resident of

25 California, County of Los Angeles. Plaintiff is legally blind and cannot use a computer

26 without the assistance of screen-reading software (otherwise known as a "screen-

27 reader"). However, Plaintiff is a proficient user of the JAWS screen-reader and uses

28 it to access the Internet. Plaintiff has visited the Website on separate occasions using

the JAWS screen-reader. During Plaintiff's separate visits to Defendant's Website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on Defendant's Website. Due to the widespread access barriers Plaintiff encountered on Defendant's Website, Plaintiff has been deterred, on a regular basis, from accessing the Website.

11. Plaintiff is a tester in this litigation seeking to ensure compliance with federal and state law. *See Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

12. Plaintiff is also a consumer who wishes to access Defendant's goods and services.

13. Plaintiff is being deterred from patronizing the Defendant's Website and brick-and-mortar locations on particular occasions.

14. If informed that the Website has been made accessible within the meaning of the UCRA and the ADA, Plaintiff will return to the Website to test its accessibility within 45 days to test such a claim of compliance with the law.

15. Plaintiff is informed and believes, and thereon alleges Defendant is a Delaware limited liability company and has its principal place of business in Culver City, CA. Defendant is registered to do business in the State of California and has been doing business in the State of California, including the Central District of California. Defendant operates brick-and-mortar locations in Los Angeles County, California. Defendant's brick-and-mortar locations constitute places of public accommodation. Defendant's Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations including product descriptions, contact options, founders information, career opportunities, pricing details, account sign-up, merchandise descriptions, store location information, and many other benefits, as well as access to various other goods, services, and privileges Defendant offers.

### VISUALLY-IMPAIRED PERSONS' ACCESS TO THE INTERNET

16.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike. As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence. Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen.  This technology is known as screen-reading software.   Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

17.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them.

18.     Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased screen-reading software program available for Windows.

19.     For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboards because they are unable to see the screen or manipulate a mouse.

20.     Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet, websites, and other digital content.

21.     If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

22.    There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility. Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible Alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so blind and visually-impaired people can navigate websites and mobile applications just as sighted people do. Without these basic components, websites and mobile applications are inaccessible to a blind person using screen-reading software.

23.    Common barriers encountered by blind and visually-impaired persons include, but are not limited to, the following:

   a.    A text equivalent for every non-text element is not provided;

   b.    Title frames with text are not provided for identification and navigation;

   c.    Equivalent text is not provided when using scripts;

   d.    Forms with the same information and functionality as for sighted persons are not provided;

   e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

   f.    Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

   g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.   Web pages do not have titles that describe the topic or purpose;

i.   The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.   One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.   The default human language of each web page cannot be programmatically determined;

l.   When a component receives focus, it may initiate a change in context;

m.   Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.   Labels or instructions are not provided when content requires user input;

o.   In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.   Inaccessible Portable Document Format (PDFs); and,

q.   The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

24.   In California and the Ninth Circuit controlling law recognizes the viability of Unruh and Americans with Disabilities Act (hereinafter "ADA") claims against commercial website and mobile application owners and operators with regard to the accessibility of such websites and mobile applications. *Robles v. Domino's Pizza, LLC* , 17-55504, 2019 WL 190134 (9th Cir. January 15, 2019) (Holding the ADA and UCRA apply to websites and mobile applications, that imposing liability

under Title III of the ADA and Unruh Act would not violate Fourteenth Amendment rights to due process, that the ADA is not impermissibly vague in this context, that regulated parties have received fair notice of their obligations since 1996, that it was error to invoke the doctrine of primary jurisdiction and finally that an order requiring compliance with WCAG 2.0 is a possible equitable remedy); *Long v. Live Nation Worldwide, Inc.*, No. C16-1961 TSZ 2018 WL 3533338 (W.D. Wash. July 23, 2018) (denying Defendant's summary judgment motion based on voluntary cessation and mootness and finding that defendant's website is subject to the accessibility regulations under the ADA as a matter of law); *Carroll v. Fedfinancial Fed. Credit Union*, 2018 WL 3212023 (E.D. Va. June 25, 2018) (denying Defendant's Motion to Dismissed based on jurisdiction, Title III applicability, and due process arguments); *Haynes v. Hooters of Am., LLC*, 17-13170, 2018 WL 3030840 (11th Cir. June 19, 2018) (holding that a private settlement agreement does not moot a new web access claim by a different plaintiff); *Gil v. SMG Holdings,* No. 1:18-cv-20107 (S.D. Fl. May 28, 2018) (denying a motion to dismiss and holding that mootness and voluntary cessation defenses did not apply when defendant claimed it was already in the process of correcting the barriers on its website*); Thurston v. Midvale Corporation, et al.*, Los Angeles Superior Court, Case No. BC663214 (Judge Samantha P. Jessner) (May 17, 2018) (granting plaintiff's summary judgment motion finding "a plain reading of the statute, as well as the [DOJ's] treatment of websites under the ADA, indicate that Defendant's website falls within the categories of 'services, … privileges, advantages, or accommodations of' a restaurant, which is a place of public accommodation under the ADA."*); Castillo v. Jo-Ann Stores, LLC,* No. 5:17-cv-20110-KBB (N.D. Ohio February 13, 2018) (denying motion to dismiss finding plaintiff has stated a cognizable website ADA claim and has standing, plaintiff successfully alleged a nexus between defendant's website and its brick and mortar stores, and the injunctive relief sought does not violate due process rights); *Gathers v. 1-800-FLOWERS.com*, No. 1:17-cv-10273 (Mass. February 12, 2018) (denying a motion to dismiss sought against

ADA claims); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, No. 2:16-cv-08211-ODW(SS) at *15. (C.D. Cal. Jan. 25, 2018) (Wright) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims) ("Pizza Hut cannot simply post a customer service phone number on its website and claim that it is in compliance with the ADA unless it shows that a visually-impaired customer 'will not be excluded, denied services, segregated or otherwise treated differently' from non-visually impaired customers who are able to enjoy full access to Pizza Hut's website" [citations omitted]); *Andrews v. Blick Art Materials, LLC*, No. 1:17-cv-00767-JBW-RLM (E.D.N.Y. Dec. 21, 2017) (Weinstein, J.) (Memorandum and Order approving settlement of website accessibility case in the form of judgment); *Brooke v. A-Ventures, LLC*, No. 2:17-cv-2868-HRH at 19. (A.Z. Nov. 22, 2017) (granting declaratory judgment that defendant's website did not comply with ADA; defendant enjoined to ensure equal access) ("[D]efendant was in violation of the Americans with Disability Act because its hotel reservations website did not afford disabled persons equal access to defendant's public accommodation"); *Rios v. New York & Company, Inc.*, No. 2:17-cv-04676-ODW (AGr) (C.D. Cal. Nov. 16, 2017) (Wright) (denying a motion for judgment on the pleadings sought against Unruh Act claims) ("[T]he Court finds that this case is not unique, 'as federal courts have resolved effective communication claims under the ADA in a variety of contexts—including cases involving allegations of unequal access to goods, benefits, and services provided through websites.' Hobby Lobby, 2017 WL 2957736, at *7"); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL at 21. (C.D. N.H. November 8, 2017) (denying a motion to dismiss sought against ADA claims) ("[Plaintiffs] rely on Title III of the ADA as governing the defendant's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy."); *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D. Cal. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against

ADA and California's Unruh Civil Rights Act claims) ("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D. Cal. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website) [ECF #40]; *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13,

2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the First Amended Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal

enjoyment of the Hotel."); *Sipe v. Huntington National Bank*, 15-CV-1083, Doc No. 21 (W.D. Pa. Nov. 18, 2015) (denying motion to dismiss based on claims the DOJ had not yet issued regulations governing website accessibility); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the First Amended Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations…. [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the First Amended Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating,

"The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually-impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access— seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility); *Hindel v. Husted,* No. 17-3207 (6th Cir., Nov. 13, 2017) (defendant bears the burden of production and persuasion as to affirmative defenses such as fundamental alteration and subject matter of state election laws do not relieve defendant of these burdens); *Davis v. BMI/BNB Travelware company* No. CIVDS1504682 WL2935482 (Cal.Super. March 21, 2016) (granting motion for summary judgment for plaintiff and ordering that defendant's website be made WCAG 2.0 compliant and awarding Unruh damages in favor of plaintiff).

25.    Each of Defendant's violations of the ADA is likewise a violation of the UCRA.  Indeed, the UCRA provides that any violation of the ADA constitutes a violation of the UCRA.  Cal. Civ. Code § 51(f).

## FACTUAL BACKGROUND

26.    Defendant offers its commercial Website to the public.

27.   The Website offers features which should allow all consumers to access the good and services offered in connection with its brick-and-mortar locations.

28.   The Website provides consumers with access to an array of goods, services, and information related to Defendant's brick-and-mortar locations which include but are limited to, the following: product descriptions, contact options, founders information, career opportunities, pricing details, account sign-up, merchandise descriptions, store location information, and many other benefits.

29.   Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's brick-and-mortar locations and otherwise.

30.   Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's brick-and-mortar locations and the numerous goods, services, privileges, and benefits offered to the public through Defendant's Website.

31.   Plaintiff cannot use a computer without the assistance of screen-reading software.

32.   However, Plaintiff is a proficient user of the JAWS screen-reader to access the Internet.

33.   Plaintiff has visited Defendant's Website on several separate occasions using the JAWS screen-reader.

34.   While attempting to navigate the Website, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

    a.   The home page has graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alt-text be coded with each picture so that

screen-reading software can speak the Alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the cursor moves over the picture. The lack of Alt-text on these graphics prevents screen-readers from accurately vocalizing a description of the graphics.

b. There are multiple unlabeled or mislabeled buttons and links. Without descriptive alternate text, Plaintiff, and other screen-reader users, have no clue about the purpose or function of the button or link;

c. Plaintiff encountered multiple pages containing insufficient navigational headings requiring Plaintiff to expend substantial additional time to access information; and,

d. Plaintiff was unable to make a purchase because of an inaccessible checkout system.

35. In May of 2020, Plaintiff attempted to do business with Defendant on the Website and due to the unlabeled buttons, lack of Alt-text, the structure of the headings and Website, cursor traps, and other barriers, Plaintiff was unable to fully and independently access the Website when visiting for the dual purpose of testing for compliance with the UCRA and ADA and place an order, and visit the nearest brick-and-mortar location.

36. Since as early as May of 2020, and until the current date, during Plaintiff's separate visits to the Website, Plaintiff encountered multiple access barrier which denied Plaintiff full and equal access to the facilities, goods, and services offered to the public and made available to the public on the Website.

37. Due to the widespread and continued access barriers that Plaintiff encountered on the Website, Plaintiff has been deterred, on a regular basis, from accessing the Website. The access barriers Plaintiff encountered on the Website have further deterred Plaintiff from visiting Defendant's brick-and-mortar locations.

38. If the Website were equally accessible to all, Plaintiff could

1    independently navigate the Website as sighted individuals do.

2         39.    Having attempted to use the Website, Plaintiff has actual knowledge of

3    the access barriers that make these services inaccessible and independently unusable

4    by blind and visually-impaired people.

5         40.    There are readily available, well established guidelines, available to

6    Defendant on the Internet, for designing, constructing, and maintaining websites to be

7    accessible to blind and visually-impaired persons. Other large business entities have

8    used these guidelines, or have otherwise been able, to make their websites accessible,

9    including but not limited to: adding Alt-text to graphics and ensuring that all functions

10   can be performed using a keyboard.  In addition, incorporating these basic changes

11   and adding certain elements to Defendant's Website would not fundamentally alter

12   the nature of Defendant's business nor would it result in an undue burden to Defendant.

13   Because maintaining and providing a website where all functions can be performed

14   using a keyboard would provide full, independent and equal access to all consumers

15   to the Website, Plaintiff alleges that Defendant has engaged in acts of discrimination,

16   including but not limited to the following policies or practices:

17              a.    Construction and maintenance of a website that is inaccessible to

18                    visually-impaired individuals, including Plaintiff;

19              b.    Failure to construct and maintain a website that are sufficiently intuitive

20                    so as to be equally accessible to visually-impaired individuals,

21                    including Plaintiff; and,

22              c.    Failure to take actions to correct these access barriers in the face of

23                    substantial harm and discrimination to blind and visually-impaired

24                    consumers, such as Plaintiff, as a member of a protected class.

25        41.    Although Defendant may currently have centralized policies for

26   maintenance and operation of the Website, Defendant lacks a plan and policy

27   reasonably calculated to make its website fully and equally accessible to, and

28   independently usable by, blind and other visually-impaired consumers, including

Plaintiff.

42.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use Defendant's Website in violation of their rights.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq.* [MEDMEN.COM]

### (By Plaintiff Against All Defendants)

42    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

43    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

42 U.S.C. § 12182(a).

44    Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Medmen.com is a service, privilege, or advantage of Defendant's locations.  Medmen.com is a service that is integrated with these locations.

45    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.  (42 U.S.C. § 12182(b)(1)(A)(i).)

46    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or

benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.  (42 U.S.C. § 12182(b)(1)(A)(ii).)

47     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

48     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.  Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).  Furthermore, Plaintiff has been denied full and equal access to Medmen.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

49     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

////

////

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq.* [MEDMEN.COM]

50    Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

51    California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

52    Defendant's locations are "business establishments" within the meaning of the Civil Code § 51 *et seq.*  Defendant generates millions of dollars in revenue from the sale of goods through its Medmen.com website.  Defendant's website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code § 51 et seq., by denying visually-impaired customers the goods and services provided on its website.  These violations are ongoing.

53    Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because Defendant has constructed a website that is inaccessible to Plaintiff, Defendant maintains the Website in an inaccessible form, and Defendant has failed to take actions to correct these barriers.

54    Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

55     The actions of Defendants violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

56     Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense.

57     Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind and visually-impaired individuals;

2.     A preliminary and permanent injunction enjoining Defendant from violating the ADA, 42 U.S.C. § 12181 *et seq.*, and/or the UCRA, Civil Code § 51 *et seq.* with respect to its website medmen.com;

3.     A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Medmen.com readily accessible to and usable by blind and visually-impaired individuals;

4.     An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

5.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1), and California Civil Code § 52(a);

6.     For pre-judgment interest to the extent permitted by law;

7.     For costs of suit; and

8.     For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this First Amended Complaint.

Dated: July 10, 2020        **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.

Attorney for Plaintiff